IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COLLEEN YVONNE MAYBERRY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:19-cv-1239 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Mayberry filed this action under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying her request for disability insurance benefits. Mayberry and the Commissioner moved for summary judgment. Dkt. 12, 13. Having considered the filings, the record, and the applicable law, the Court **RECOMMENDS** Mayberry's Motion be **GRANTED**, the Commissioner's Motion be **DENIED**, and the Commissioner's final decision be **REMANDED** for further consideration by the Commissioner as set forth herein.[1]

### I. Background

**1. Factual and Administrative History**

Mayberry filed applications for disability insurance benefits and supplementary security income on December 6, 2016, alleging a disability onset date of May 18, 2014 due to major depression, attention deficit disorder, and dyslexia. Tr. 248-61, 270-71. The agency denied

---

[1] District Judge Gray H. Miller referred these Motions to this Magistrate Judge for report and recommendation. Dkt. 16.

Mayberry's claim on initial review on April 6, 2017 and on reconsideration on August 8, 2017. Tr. 80-90, 104-116. An administrative law judge ("ALJ") held a hearing on February 21, 2018 at which Mayberry and a vocational expert testified. Tr. 32-49. The ALJ denied Henderson's application for benefits on April 19, 2018. Tr. 17-27. The Appeals Council denied review on January 28, 2019, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-3; s*ee* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At the second step, the ALJ must determine whether the claimant has a severe

impairment. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § pt. 404, subpt. p, app. 1 [hereinafter "App. 1"]. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is the claimant's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work. If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d at 452-53.

**4. The ALJ's Decision**

Based on these principles, as well as his review of the evidence presented at the hearing, the ALJ determined that Mayberry met the insured status requirements of the Social Security Act through July 30, 2015, and that she has not engaged in substantial gainful activity since May 18, 2014. Tr. 19. The ALJ further concluded that Mayberry suffers from severe impairments of depression and bipolar disorder. Tr. 20. The ALJ found Mayberry did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 after specifically considering Listings 12.04 and 12.11. Tr. 20-21.

The ALJ determined Mayberry has the RFC for a full range of work at all exertional levels with some non-exertional limitations:

> [S]he should have only occasional interaction with the public; work should include only simple procedures that are routine and repetitive, without frequent changes in duties; there should be only minimal stress, defined as non-assembly line pace to the work; work should not require reading for meaning; and work should require understanding, remember, and carrying out simple instructions.

Tr. 21. Relying on the testimony of a vocational expert, the ALJ determined Mayberry was unable to perform any past relevant work and that the transferability of her job skills is irrelevant because her past relevant work is unskilled. Tr. 26. Considering Mayberry's age, education, work experience, and RFC, the ALJ concluded jobs exist in significant numbers in the national economy that she can perform. Tr. 26. For that reason, the ALJ concluded Mayberry is not under a disability as defined by the Social Security Act and denied her application for benefits. Tr. 26-27.

## II. Analysis

Mayberry argues the ALJ's decision is unsupported by substantial evidence because it is based on a flawed RFC. Dkt. 12-1 at 4-7. In her Motion for Summary Judgment, Mayberry argues the ALJ, despite giving great weight to Dr. Williams-Markum's consultative examination opinion, failed to incorporate into the RFC three "major" limitations from the opinion: a need to "model" behavior in order to learn a new task, an inability to follow written or verbal instructions, and an inability to function independently.[2] *Id*. at 5-6. In her Response to the Commissioner's Motion for Summary Judgment, which makes a more limited argument for why the RFC is flawed, Mayberry argues the "RFC does not incorporate a limitation related to contact with coworkers and supervisors. It only limits her to occasional interaction with the public." Dkt. 15-1 at 1-2. Finally,

---

[2] Mayberry argues Dr. Williams-Markum's consultative examination reveals a fourth "major limitation" in her ability to read for comprehension. *Id*. at 5. However, Mayberry acknowledges the ALJ included corresponding reading comprehension limitations in her RFC. *Id*. at 5-6.

4

as part of her argument that the RFC is flawed because it fails to address her limitations with respect to coworkers and supervisors, Mayberry argues the state agency psychological consultants' opinion and Dr. Williams-Markum's opinion conflict on the issue and that the ALJ erred by assigning both opinions great weight. Dkt. 15-1 at 2.

It is solely the responsibility of the ALJ to determine a claimant's RFC and to weigh evidence in doing so. 20 C.F.R. § 404.1546(c); *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). To determine a claimant's RFC, the ALJ is required to consider and explain the weight given to non-treating source opinions, such as consultative examiners. 20 C.F.R. § 404.1527(e). Although the ALJ is free to assign appropriate weight to consultative examination opinions, the ALJ may not reject a medical opinion without an explanation supported by good cause. *Osborne v. Colvin*, Civil Action No. 13-0415, 2014 WL 1305045, at *6 (W.D. La. Apr. 1, 2014) (citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000)). While the ALJ is not bound by any medical opinion, the ALJ errs when she does not reasonably incorporate all of the claimant's limitations into the RFC determination. *Vandestreek v. Colvin*, Civil Action No. 7:14-cv-00001-O, 2015 WL 1239739, at *8 (N.D. Tex. Mar. 17, 2015) (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(3)(2)(i); *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003)).

### 1. The ALJ did not err by failing to incorporate the three alleged major limitations.

Mayberry contends Dr. Williams-Markum's opinion includes three functional limitations that were not included in the ALJ's determination of Mayberry's non-exertional limitations. Dkt. 12-1 at 5-6 (alleging functional limitations including (1) a need to "model" behavior in order to learn a new task; (2) an inability to follow written or verbal instructions; and (3) an inability to function independently). The Court finds these alleged limitations are not part of Dr. Williams-

Markum's opinion regarding Mayberry's functional capacity. In the report, Dr. Williams-Markum describes Mayberry's "functional capacity" as follows:

> Due to [Mayberry's] limited reading abilities and challenges with comprehension, it is not likely that [she] could carry out, understand, and remember instructions that are either complex or multiple step. Social interaction and performance is not likely to be successful independently or with interpersonal relationships involving coworkers and supervisors.

Tr. 355. On its face, Dr. Williams-Markum's opinion demonstrates that she did not include in her functional capacity opinion the three alleged "major" limitations argued by Mayberry. The Court disagrees that Dr. Williams-Markum found Mayberry requires work to be "modeled" for her. Rather, Dr. Williams-Markum's report discusses Mayberry's self-reported ability to follow instructions when shown how to do a task. Tr. 351-52, 355. Dr. Williams-Markum opined that Mayberry is limited to understanding, remembering, and carrying out simple instructions. Tr. 355. She did not opine that Mayberry may only perform work if it is modeled for her.

It is even more obvious that Dr. Williams-Markum did not opine that Mayberry's functional capacity includes an inability to follow written or verbal instructions. *Id.* Again, the ALJ's finding that Mayberry can understand, remember, and carry out simple instructions addresses Dr. Williams-Markum's opinion regarding Mayberry's "limited reading abilities and comprehension." Tr. 21, 355.

Similarly, the record and Dr. Williams-Markum's opinion do not reflect that Mayberry is unable to "function independently." *See* Tr. 352 (noting Mayberry pays bills with her child support card, makes beds, washes dishes, cooks, gets her childrens' clothes lined up for the day, goes to the park with her children, can count change, and is responsible for her daily grooming and personal hygiene). The Court finds the ALJ did not err by failing to include the three major

6

limitations alleged by Mayberry because those limitations were not included in Dr. Williams-Markum's opinion regarding her functional capacity. *See* Tr. 355.

**2. The ALJ erred by failing to address limitations found by Dr. Williams-Markum regarding Mayberry's ability to interact with coworkers and supervisors.**

Mayberry argues the ALJ failed to incorporate into the RFC her inability to function independently in interpersonal relationships involving coworkers and supervisors.[3] Dkt. 12-1 at 5. The ALJ's RFC determination addresses Mayberry's social functioning ability only by limiting her to "occasional interaction with the public." Tr. 21. The ALJ assigned great weight to Dr. Williams-Markum's opinion, but his written decision does not address Dr. Williams-Markum's opinion of Mayberry's limitations in her ability to interact with coworkers and supervisors. The Court finds some support in the record for Dr. Williams-Markum's opinion that Mayberry may not be independently successful in her ability to interact with co-workers and supervisors.[4]

Although it is within the ALJ's province to determine Mayberry's RFC, the ALJ failed to give a reason for not incorporating this non-exertional limitation in Mayberry's RFC after assigning great weight to Dr. Williams-Markum's opinion. *See Taylor v. Astrue*, Civil Action No. H-11-3762, 2012 WL 4955491, at *9 (S.D. Tex. Oct. 16, 2012) (finding remand required where the ALJ assigned great weight to a medical opinion but failed to incorporate all of the limitations from the opinion without giving any explanation); *see also Vandestreek v. Colvin*, 2015 WL 1239739, at *8 (finding error where the ALJ assigned great weight to a medical opinion but failed

---

[3] Dr. Williams-Markum's wording regarding this functional limitation is confusing, but the Court finds that a fair reading of her functional capacity opinion, based on the record and the narrative in the report, demonstrates that Dr. Williams-Markum believes Mayberry will have difficulty interacting with coworkers and supervisors and may not be successful in those interactions independently. *See* Tr. 355 ("Social interaction and performance is not likely to be successful independently or with interpersonal relationships involving coworkers and supervisors.").

[4] *See* Tr. 352. The "SOCIAL FUNCTIONING" section of the report includes statements that Mayberry described herself as not "having any close friendships because she does not trust them[,]" that records demonstrate she "did not trust family members because she believes they took stuff from her, they talk about her, and she felt they are trying to kill her[,]" and she "'will not eat anything they make.'"

7

to incorporate all limitations from the opinion); *see also Edwards v. Colvin*, Civil Action No. 3:15CV227 HTW-LRA, 2016 WL 7976043, at *4-5 (S.D. Miss. Aug. 15, 2016) (finding error where the ALJ assigned significant weight to a medical opinion but excluded certain limitations from the RFC determination without providing any explanation). The Court recommends remand in this case so that the ALJ can either address Mayberry's limitations on her ability to interact with coworkers and supervisors in the RFC or provide good cause for why he rejected that portion of Dr. Williams-Markum's opinion. *See* 20 C.F.R. § 404.1527(e); *see also Osborne v. Colvin*, 2014 WL 1305045, at *6 (citing *Loza v. Apfel*, 219 F.3d at 395) (finding the ALJ's step five determination was premised on an erroneous RFC and remand was required where "the ALJ did not completely reject [the medical opinion given great weight]; rather, she selectively adopted part of her findings, and then failed to explain why she excluded he remainder.").

Further, the ALJ's written decision indicates he assigned great weight to both Dr. Williams-Markum's and the state agency psychologists' opinions regarding Mayberry's social functioning ability. Tr. 24-25. Mayberry argues Dr. Williams-Markum opined that she has "difficulty interacting with others" and the state agency psychologists opined that she can have "some interaction with others." *Id.* Mayberry argues these opinions conflict with each other and the ALJ erred by failing to address the conflict. Dkt. 15-1 at 2. On remand, the ALJ should address whether a conflict exists between the opinions. In the event conflict does exist, the ALJ should explain the basis for rejecting the conflicting portion of an opinion.

For the reasons stated herein, the Court recommends this case be remanded for further evaluation of Mayberry's RFC in light of Dr. Williams-Markum's opinion that Mayberry is not likely to be successful independently in her social interaction with supervisors or co-workers. On remand, the ALJ should either explain how the existing RFC determination addresses these

limitations, add a corresponding limitation in a revised RFC determination, or explain his decision to reject these parts of Dr. Williams-Markum's opinion. The ALJ should also consider whether a conflict exists between Dr. Williams-Markum's and the state agency psychologists' opinions regarding Mayberry's social functioning ability. To the extent such a conflict does exist, the ALJ should explain his decision to reject a conflicting opinion.

### III. Conclusion

For the reasons discussed above, the Court **RECOMMENDS** the Commissioner's Motion be **DENIED**, Mayberry's Motion be **GRANTED**, and the Commissioner's final decision be **REMANDED** for further consideration as set forth herein.

The Clerk of Court shall send copies of the Memorandum and Recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Singed on August 11, 2020 at Houston, Texas.

                                            Christina A. Bryan
                                            United States Magistrate Judge